RIEMER & ASSOCIATES LLC
Attorneys for Plaintiff
Office and Post Office Address
60 East 42nd Street, Suite 2430
New York, New York 10165
(212) 297-0700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

RICHARD ZOLLER,                                06 CV 0112 (KMK)

                           Plaintiff,          PLAINTIFF'S
                                               STATEMENT
              -against-                        PURSUANT TO
                                               LOCAL RULE 56.1
INA LIFE INSURANCE COMPANY OF NEW YORK,
and LUCENT TECHNOLOGIES INC.
LONG TERM DISABILITY PLAN
FOR MANAGEMENT EMPLOYEES,

                           Defendants.
----------------------------------------------------------------X

          Plaintiff, by his attorneys, Riemer & Associates LLC, as and for a

statement pursuant to Local Rule 56.1 contends that there is no genuine issue to be tried

with respect to the following material facts as follows:

Zoller's Work Background

          1.      As an employee of Lucent Technologies Inc. ("LUCENT"),

plaintiff Richard Zoller ("Zoller") was eligible to participate in the Lucent Technologies

Inc. Long Term Disability Plan (the "Plan").  (LTD 4).[1]

---

[1] All citation references to ("LTD __") are to the Bates Stamp numbers on documents produced by
Defendant Lucent Technologies Inc. Long Term Disability Plan for Management Employees.  Citation
references to ("CGLIC.__") are to the Bates Stamp numbers on CIGNA's claim file produced during
discovery.  Citation references to ("Ex.__") are to the exhibits annexed to Scott M. Riemer's Affirmation
dated May 25, 2007.

1

2.     The Plan is funded by Connecticut General Life Insurance Company Group Policy No. 2523517 ("CGLIC").  (LTD 1-45).

3.     As a participant in the Plan, Zoller was entitled to long term disability ("LTD") benefits in the event that he became disabled within the meaning of the Plan.  (LTD 5-6).

4.     A participant is disabled under the Plan if: (1) during the first 12 months of disability he or she is prevented from "engaging in his or her occupation or employment at the Company, for which the Eligible Employee is qualified, based on training, education or experience" and (2) thereafter if the Eligible Employee is "incapable of performing the requirements of any job for any employer (including non-Lucent Technologies Inc. employment),(as a management or LBA employee), for which the individual is qualified or may reasonable become qualified by training, education or experience, other than a job that pays less than 60% of the Eligible Employee's Eligible Pay that would have been in effect on the day preceding the day that the Eligible Employee's Short Term Disability Benefits ceased."  (LTD 5).

5.     Zoller was employed as a Project Manager at LUCENT for over two years.  (CGLIC 301).

6.     He earned compensation in the amount of $107,000 per year in that position.  (CGLIC 301).

7.     The job was incredibly demanding and stressful, requiring high energy, intense concentration and extensive travel.  (CGLIC 148).

8.      As an essential duty of this job, Zoller was responsible for implementing and overseeing a software billing solution for LUCENT in the United States and in various other countries.  (CGLIC 148).

9.      The job required extensive cognitive abilities: he had to remember a tremendous amount of detail; he had to develop and maintain relationships with client executives; and he had to perform in high pressure situations.  In addition, he had to handle multiple complex projects in different organizations (customers and internal) in the United States and in various countries.  There was no room for weakness or error. (CGLIC 148).

10.     Basic competencies for the job were strong analytical skills, interpersonal and conflict resolution skills and ability to travel 75% of the time.  (CGLIC 148).

11.     The Plan Document does not grant discretionary authority to the LTD Administrator or CGLIC.  (LTD 5).

12.     The Plan Document provides that it is the exclusive contract between the parties.  The Plan provides "[t]his document legally governs the operation of the Plan." (LTD 17).

13.     The Summary Plan Description ("SPD") clearly specifies that the terms of the official Plan documents control.  Each page in the SPD contains the legend, "More detailed information is provided in the official Plan Documents, which are controlling."  Moreover, the SPD Provides:

> More detailed information is provided in the official LTD Plan Documents, which are the final authority.  In all instances, the LTD Plan documents will control and govern the operation of the LTD Plan. (LUCENT 24 ). . . .

3

This summary plan description is designed to describe the [Plan] in easy-to-understand terms. It is shorter and less technical than the legal LTD Plan documents. However, it is the Plan documents and contract that determine your rights under the Plan. In all instances, the Plan documents will govern. Plan documents include the official LTD Plan text and any applicable contract terms, which specifically relate to your benefit claim. (LUCENT 38).

14.     The SPD grants discretionary authority to the LTD Administrator, but the LTD Administrator did not decide this claim. (LTD 5, CGLIC 75-76, 119-1122, 117-118).

15.     There is no document that delegates discretionary authority from the LTD Plan Administrator to CGLIC. (LTD 1-45).

16.     The Book of Operating Knowledge directs employees of CGLIC to apply the terms of the actual policy or contract, not the terms of a summary plan description. (Riemer Aff., Ex. C).

17.     Neither Lucent, nor the LTD Plan Administrator delegated discretionary authority to CGLIC. (LTD 1-45).

18.     Because neither Lucent, nor the LTD Plan Administrator delegated discretionary authority to CGLIC, CGLIC had no discretionary authority to determine Zoller's eligibility benefits. (LTD 16).

4

Zoller's Initial Application for LTD Benefits

19.    On March 19, 2003, Zoller submitted an application for LTD benefits. (CGLIC 290-296).

Medical Records Supporting Zoller's Initial Application for LTD Benefits

Dr. Julie Barnes, Zoller's Treating Doctor

20.    The Attending Physician Statement, dated March 30, 2003, submitted by Dr. Julie Barnes diagnosed Zoller as suffering from polysubstance dependence, dysthymia and generalized anxiety disorder. (CGLIC 257-258).

21.    Dr. Barnes noted that Zoller has a history of depression. (CGLIC 257).

22.    Dr. Barnes opined that Zoller is "at danger of relapse and at risk of worsening depression and anxiety." (CGLIC 258).

23.    Dr. Barnes noted that she had recommended hospitalization of Zoller but his "insurance company denied" such treatment. (CGLIC 257).

24.    Dr. Barnes opined that Zoller is unable to engage in stress situations or engage in interpersonal relations. (CGLIC 258).

25.    Dr. Barnes opined that Zoller is totally disabled from his regular work. (CGLIC 258).

26.    Dr. Barnes opined that Zoller is totally disabled from all other work. (CGLIC 258).

27.    Dr. Barnes submitted Zoller's medical records from July 9, 2001 through April 23, 2003, which confirmed her diagnosis that Zoller is suffering from

polysubstance dependence, dysthymia and generalized anxiety disorder.  (CGLIC 195-229).

### Dr. John W. Rosenberg, Zoller's Treating Doctor

28.    A Healthcare Provider's Report dated September 11, 2002 submitted by Dr. Rosenberg diagnosed Zoller as suffering from dysthymia and depression.  (CGLIC 242-246).

### CGLIC's Initial Denial

29.    By letter dated May 30, 2003 ("Initial Denial"), CGLIC denied Zoller's application for LTD benefits.  (CGLIC 119-122).

30.    Prior to denying Zoller's application, CGLIC did not consider or investigate whether Zoller was disabled from his own occupation at Lucent. (CGLIC 119-122).

31.    Prior to denying Zoller's application, CGLIC did not consider or investigate whether Zoller was able to perform the duties of a job for which he was qualified by training, education and experience and in which he could earn in excess of $64,200. (CGLIC 119-122).

32.    Prior to denying Zoller's application, no one on behalf of CGLIC conducted a vocational assessment or labor market survey with respect to Zoller. (CGLIC 119-122, 161-164).

33.    Prior to denying Zoller's application, the only medical professional to review Zoller's application was Dr. I. Jack Abramson.  (CGLIC 161-164).

<u>Dr. Abramson's First Report</u>

34.    Dr. Abramson wrote a report dated May 16, 2003 summarizing his review of the medical records of Zoller.  (CGLIC 161-164).

35.    Prior to preparing his May 16, 2003 report, Dr. Abramson did not physically examine or interview Zoller.

36.    Prior to denying Zoller's application, no medical professional on behalf of CGLIC physically examined or interviewed Zoller.  (CGLIC 119-122, 161-164).

37.    The Initial Denial is based solely on Dr. Abramson's opinions. (CGLIC 119-122).

38.    The Initial Denial acknowledged and confirmed Zoller suffers from polysubstance dependence, dysthymia, depression, anxiety, back pain, anemia and depression.  (CGLIC 119-122).

39.    Discovery revealed that Dr. Abramson was used repeatedly by CIGNA.  In 2002, Dr. Abramson conducted 43 reviews for CIGNA; in 2003, 71 reviews; in 2004 46 reviews; and in 2005, 25 reviews.  (Riemer Aff., Ex. B).

Zoller's First Appeal

40.    By letter, dated November 25, 2003, Zoller wrote CGLIC requesting a review of the denial of LTD benefits. (CGLIC 153).

Medical Records Submitted by
Zoller in Support of First Appeal

Dr. Julie Barnes, Zoller's Treating Doctor

41.    In her report dated November 12, 2003, Dr. Barnes reiterated her opinion that Zoller suffers from "significant anxiety and depression and that it has varied from moderate to severe." (CGLIC 151-152).

42.    In her report, Dr. Barnes corrects Dr. Abramson's misrepresentation of their telephone conversation. Dr. Barnes' noted that she never stated that Zoller could "function at any occupation at this time." Quite the opposite is true. Dr. Barnes stated that she had a telephonic conversation with Dr. Abramson wherein Dr. Abramson asked her if Zoller could "flip hamburgers" in which Dr. Barnes replied "I suppose he could flip burgers." (CGLIC 151-152).

43.    Dr. Barnes' stated that she was never asked by Dr. Abramson if Zoller could perform at any level higher than this nor was she asked if he could have "flipped the burgers full time." (CGLIC 151-152).

44.    Dr. Barnes stated that she never said that Zoller's depression and anxiety was "mild to moderate." (CGLIC 152).

45.    Dr. Barnes states that Dr. Abramson's representation of their conversation was "inaccurate and is contradicted in my notes, in my record of my conversation with Dr. Abramson, and in each and every report requested for his disability." (CGLIC 152).

Dr. Denise Szczucki, Zoller's Treating Doctor

46.     In her report dated November 20, 2003, Dr. Szczucki diagnosed Zoller as suffering from major depression (recurrent and severe) and polysubstance dependence.  (CGLIC 114-115).

47.     Dr. Szczucki opined that Zoller is disabled.  (CGLIC 114-115).

48.     Dr. Szczucki noted that Zoller is suffering from "depression, feelings of helplessness and worthlessness, poor concentration and short term memory, and significant psychomotor retardation."  (CGLIC 114-115).

49.     Dr. Szczucki diagnosed Zoller as having a GAF of 35 (CGLIC 114).

50.     Dr. Szczucki opined that Zoller's prognosis is "fair."  (CGLIC 115).

Dr. Mark D. Green, Zoller's Treating Doctor

51.     The Attending Physician Statement, dated May 23, 2003, submitted by Dr. Green diagnosed Zoller as suffering from severe depression and polysubstance dependence.  (CGLIC 156-157).

52.     Dr. Green opined that Zoller is disabled.  (CGLIC 157).

53.     Dr. Green opined that Zoller is totally disabled from regular work. (CGLIC 157).

54.     Dr. Green opined that Zoller is totally disabled from all other work.  (CGLIC 157).

55.     Dr. Green opined that Zoller is not a suitable candidate for trial employment at his employer's regular job or any job.  (CGLIC 157).

56.    By report, dated May 28, 2003, Dr. Green "urged" that his Attending Physician Statement, dated May 23, 2003, summarizing Zoller's "disabling condition" be used in the determination for Zoller's benefits.[2]  (CGLIC 155).

CGLIC Denies Zoller's First Appeal

57.    By letter dated February 23, 2004, CGLIC denied Zoller's November 25, 2003 appeal.  (CGLIC 117-118).

58.    Prior to denying Zoller's First Appeal, CGLIC did not consider or investigate whether Zoller was disabled from his own occupation at Lucent. (CGLIC 117-118).

59.    Prior to denying Zoller's First Appeal, CGLIC did not consider or investigate whether Zoller was able to perform the duties of a job for which he was qualified by training, education and experience and in which he could earn in excess of $64,200. (CGLIC 117-118).

60.    Prior to CGLIC denying Zoller's First Appeal, no one on behalf of CGLIC conducted a vocational assessment or labor market survey with respect to Zoller. (CGLIC 117-118).

61.    CGLIC based its determination that Zoller was not disabled solely on a second document review by Dr. Abramson.  (CGLIC 117-118, 128-130).

---

[2] Dr. Green had furnished an Attending Physician Statement Report in April of 2003 and Cigna advised Zoller on May 16, 2003 they never received it.

Dr. Abramson's Second Report

62.    In conducting his second review, Dr. Abramson did not physically examine or interview Zoller.  (CGLIC 128-130).

63.    Prior to denying Zoller's First Appeal, no medical professional on behalf of CGLIC physically examined or interviewed Zoller.  (CGLIC 117-118).

Dr. Abramson's Report Contained Pervasive Factual Errors

64.    Despite receiving Dr. Barnes' report, dated May 16, 2003, stating that she never stated that Zoller's depression and anxiety were mild to moderate, Dr. Abramson continued to rely on their telephone conversation, stating "[m]y previous discussion with Dr. Barnes indicated that she was working with the claimant on maintaining sobriety and avoiding relapse.  She indicated from mild to moderate levels of anxiety and depression."  (CGLIC 129).

65.    Dr. Abramson acknowledged that Dr. Barnes' description of Zoller as "virtually bedridden" in the winter of 2002, "would clearly indicate severity of symptomatology adequate to support occupational impairment" and inability "to function in a work environment from June 17, 2002 to June 30, 2003." (CGLIC 130).

66.    Dr. Abramson erroneously concluded that the winter that Zoller was "virtually bedridden" was in the winter prior to Zoller's disability (2001-2002), rather than the winter following the initial date of his disability, June 17, 2002.  (CGLIC 129-130).

Dr. Abramson Failed to Credit the Reliable
Opinions of Zoller's Treating Doctors

67.     Dr. Abramson disregarded Dr. Green's conclusion that Zoller is
totally disabled from his regular job. (CGLIC 128-130).

68.     Dr. Abramson disregarded Dr. Green's conclusion that Zoller is
totally disabled from all other work. (CGLIC 128-130).

69.     Dr. Abramson disregarded Dr. Szczucki's conclusion that Zoller is
disabled. (CGLIC 114-115).

70.     In making his opinion, Dr. Abramson did not explain why he
differed with Zoller's treating doctors. (CGLIC 128-130).

Dr. Abramson Applied The
Wrong Definition of Disability

71.     Dr. Abramson concluded that Zoller did not demonstrate any
objective functional impairment that would render him incapacitated from "any
occupation." (CGLIC 130).

72.     Dr. Abramson did not consider whether Zoller was totally disabled
from his own occupation at Lucent during the first 12 months of disability. (CGLIC
130), (LTD 5).

73.     Dr. Abramson did not consider whether Zoller could perform the
duties of a job in which he could earn over $64,200 per year and for which he is qualified
by training, education and experience. (CGLIC 130).

74.     Dr. Abramson opines, "The claimant's ability to function
occupationally in 'any occupation' appears to be intact. I see no clinical reason in the
record why he could not function in any occupation on a full-time bases." (CGLIC 163).

75.    In making such an opinion, Dr. Abramson did not explain his methodology and cited no guideline, medical article, or other authority to support his opinion.  (CGLIC 128-130).

> CGLIC Failed to Follow the Department of Labor
> Regulations By Having Dr. Abramson
> <u>Review Both the Initial Claim and the Appeal</u>

76.    Dr. Abramson was the only doctor that CGLIC consulted regarding Zoller's Initial Claim.

77.    Dr. Abramson was the only doctor that CGLIC consulted regarding Zoller's First Appeal.

78.    By consulting with Dr. Abramson for both the initial denial and the first appeal, CGLIC violated 29 CFR 2560.503-1(h)(3)(v).  (CGLIC 117-118, 119-122).

<u>Zoller's Second Appeal</u>

79.    In October of 2004, Zoller submitted his Second Appeal of CGLIC's denial.  (CGLIC 87-88).

> <u>Medical Records Supporting Zoller's Second Appeal</u>

> <u>Dr. Denise Szczucki, Zoller's Treating Doctor</u>

80.    Dr. Denise Szczucki submitted a second report dated November 7, 2004 summarizing her conclusions that Zoller suffers from major depression (recurrent, severe), polysubstance dependence, in full remission.  (CGLIC 84-85).

81.    Dr. Szczucki opined that the source of Zoller's disability is "severe major depressive disorder."  (CGLIC 84-85).

82.    Dr. Szczucki opined that Zoller is very lethargic, depressed, has feelings of hopelessness and worthlessness, poor concentration and memory, and significant psychomotor retardation.  (CGLIC 84-85).

83.    Dr. Szczucki opined that "to date, Zoller's depression has minimally improved."  (CGLIC 84).

84.    Dr. Szczucki's diagnosed that Zoller's progress was "fair." (CGLIC 85).

85.    Dr. Szczucki diagnosed Zoller as having a GAF of 40. (CGLIC 85).

<u>Dr. Caldwell, Zoller's Treating Doctor</u>

86.    On February 9, 2004, Zoller completed a MMPI-2 Test. (CGLIC 101).

87.    Dr. Alex B. Caldwell submitted a report, dated February 19, 2004 ("CALDWELL REPORT"), concluding that the results of Zoller's MMPI-2 Test indicated that Zoller suffers from moderate to severe depression.  (CGLIC 102).

88.    Dr. Caldwell opined that Zoller's depression suggests he is a suicide risk.  (CGLIC 104).

89.    Dr. Caldwell opined that Zoller "does not currently test as having the strength to work and strongly recommends considering hospitalization."  (CGLIC 104).

Dr. Paul Hymowitz, Zoller's Treating Physician

90.     Dr. Paul Hymowitz submitted a report, dated February 19, 2004, which included a Beck Depression Inventory Test and MMPI-2 Test completed by Zoller.  (CGLIC 0098-0112).

91.     Dr. Hymowitz conducted two separate clinical in-person interviews with Zoller.  (CGLIC 98-99).

92.     Zoller completed the Beck Depression Inventory Test on February 19, 2004. (CGLIC 100).

93.     Based on his in-person interviews and the results of the Beck Depression Inventory Test and the MMPI-2 Test, Dr. Hymowitz opined that Zoller suffers from moderate to severe depression, severe anxiety and chemical dependency (currently in remission).  (CGLIC 98-112).

94.     Dr. Hymowitz noted that Zoller scored a 32 on the Beck Scale, which is consistent with severe depression and includes a symptom picture of insomnia, serious weight loss, anheodnia, fatigue, hopelessness and a blunted emotional state.  (CGLIC 99-100).

95.     Dr. Hymowitz opined that the results of the Beck Depression Inventory Test were consistent with Zoller's MMPI-2 profile.  (CGLIC 99).

96.     Dr. Hymowitz opined that the MMPI-2 validity scales indicate that the "extent of psychological distress that he reported does appear genuine."  (CGLIC 99).

97.     Dr. Hymowitz opined that Zoller does not currently test as having the strength to sustain employment and suffers from severe depression.  (CGLIC 99).

CGLIC Denies Zoller's Second Appeal

98.    By letter, dated February 3, 2005, CGLIC denied Zoller's Second Appeal, dated October 22, 2004.  (CGLIC 75-76).

99.    Prior to denying Zoller's Second Appeal, CGLIC did not consider or investigate whether Zoller was disabled from his own occupation at Lucent. (CGLIC 75-76).

100.    Prior to denying Zoller's Second Appeal, CGLIC did not consider or investigate whether Zoller was able to perform the duties of a job for which he was qualified by training, education and experience and for which he could earn in excess of $64,200. (CGLIC 75-76).

101.    Prior to denying Zoller's Second Appeal, no one on behalf of CGLIC conducted a vocational assessment or labor market survey with respect to Zoller. (CGLIC 75-76).

102.    Prior to denying Zoller's Second Appeal, no medical professional on behalf of CGLIC physically examined or interviewed Zoller.  (CGLIC 117-118).

103.    Prior to denying Zoller's Second Appeal, no medical professional on behalf of CGLIC reviewed any of the medical documentation submitted by Zoller in support of his Second Appeal.  (CGLIC 117-118).

104.    The Second Appeal was denied solely upon the authority of Mr. Troy Phipps, an Appeals Claim Examiner.

105.    Mr. Phipps has no medical training.  (CGLIC 75-76).

Dated: New York, New York
       May 25, 2007

                                   RIEMER & ASSOCIATES LLC
                                   Attorneys for Plaintiff
                                   60 East 42nd Street, Suite 2430
                                   New York, New York 10165
                                   (212) 297-0700

By: _____
                 Scott M. Riemer (SR5005)

## CERTIFICATE OF SERVICE

     I hereby certify that I am attorney for Plaintiff and that on May 25, 2007, I caused to be served by first class mail a true and correct copy of Affirmation of Scott M Riemer, Plaintiff's Statement Pursuant to Local Rule 56.1, and Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment to the following:

TO:    Amy Traub, Esq.
        Epstein, Becker & Green P.C.
        250 Park Avenue
        New York, New York 100177-1211
        (212) 351-4500
        Attorneys for Defendant Lucent Technologies Inc. Long Term Disability
            Plan for Management Employees

Dated: New York, New York
       May 25, 2007

                               SCOTT M. RIEMER (SR5005)
                               60 East 42nd Street, Suite 2430
                               New York, New York  10165
                               (212) 297-0700

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am attorney for Plaintiff and that on May 25, 2007, I caused to be served by first class mail a true and correct copy of Affirmation of Scott M Riemer, Plaintiff's Statement Pursuant to Local Rule 56.1, and Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment to the following:

TO:     Kevin Horbatiuk, Esq.
        Russo, Keane & Toner, LLP
        26 Broadway 28th Floor
        New York, NY  10004
        212-482-0001
        Attorneys for Defendant INA Life Insurance Company of New York

Dated: New York, New York
       May 25, 2007

_____
SCOTT M. RIEMER (SR5005)
60 East 42nd Street, Suite 2430
New York, New York  10165
(212) 297-0700